## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

John M. White,

                Plaintiff,

      v.

J.C. Penney Company, Inc.,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 05-2977 ADM/JJG

---

Andrea Gesellchen, Esq., and Beth E. Bertelson, Esq., Bertelson Law Office, P.A., Minneapolis, MN, argued for and on behalf of Plaintiff.

Gregory M. Bair, Esq., J.C. Penney Corporation, Inc., Plano, TX, argued for and on behalf of Defendant.

---

## I. INTRODUCTION

On March 15, 2006, oral argument before the undersigned United States District Judge was heard on J.C. Penney Company, Inc.'s ("J.C. Penney" or "Defendant") Motion to Compel Arbitration and Dismiss Under Rule 12(b) [Docket No. 3]. In its Complaint [Docket No. 1], Plaintiff John M. White ("White" or "Plaintiff") seeks damages against J.C. Penney for alleged age discrimination and retaliation. Because the arbitration clause between J.C. Penney and White is valid and enforceable, the Motion is granted and the Complaint dismissed.

## II.  BACKGROUND[1]

Plaintiff White was initially hired by J.C. Penney in October 1975 to work at its Milwaukee, Wisconsin store. White Aff. [Docket No. 13] ¶ 2. In 1988, White was promoted

---

[1] For purposes of the instant Motion, the facts are viewed in the light most favorable to the nonmoving party. See Digi-Tel Holdings, Inc. v. Proteq Telecomms., 89 F.3d 519, 522 (8th Cir. 1996); Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

and transferred to J.C. Penney's Edina, Minnesota store.  <u>Id.</u> ¶ 4.  He was later promoted and transferred to the Burnsville, Minnesota store in 1991.  <u>Id.</u> ¶ 5.  In 2003, White was yet again promoted, and assigned to the Edina, Minnesota store.  <u>Id.</u> ¶ 6.

In 1996, while White was employed at the Burnsville store, J.C. Penney implemented a dispute resolution program for its management associates.  Entitled "The JCPenney Alternative," the program is set forth in a booklet published by J.C. Penney.  Ex. to Woodbury Aff. [Docket No. 5].  The booklet states that:

> You and JCPenney are required to use this program.  In the future if you feel you have been unlawfully terminated, you must use THE JCPENNEY ALTERNATIVE program, rather than courtroom litigation to resolve differences regarding that termination.

<u>Id.</u> (emphasis in original).  The booklet specifies the method for dispute resolution.  The first step of the program is an independent internal review of the discharge.  <u>Id.</u>  If either party is unsatisfied with the outcome, the next step is binding arbitration.  <u>Id.</u>  The procedures for binding arbitration are explained in a separate document entitled "Rules of Arbitration."  Ex. to Woodbury Aff.  The Rules of Arbitration detail the arbitration procedures to be conducted by the American Arbitration Association.  <u>Id.</u>  Under the Rules of Arbitration, if an employee successfully arbitrates a claim, J.C. Penney is responsible for the entire arbitration fee.  <u>Id.</u>  If J.C. Penney is successful, the employee is responsible for a small percentage of the arbitration costs.  <u>Id.</u>

J.C. Penney distributed the dispute resolution booklet and Rules of Arbitration to all management associates.  Woodbury Aff. ¶ 6.  Additionally, in February 1996, Timothy Woodbury, former District Personnel Manager for J.C. Penney, explained the new program to the management associates in his district, including the Burnsville store where Plaintiff was

employed.  Id. ¶¶ 3, 5, 6.  Management associates who were employed at the time of the

implementation of the program were not asked to sign a consent form to the new program;

however, management associates who began work after March 1, 1996, were required to

acknowledge the program in writing.  Id. ¶ 7.  Management associates already employed at J.C.

Penney were of course free to leave their employment.  Id.  Plaintiff did not complain or object

to the program, and remained employed with J.C. Penney until his termination in 2004, eight

years after the arbitration program took effect.  Id. ¶ 9.

In the instant Motion, J.C. Penney seeks to compel arbitration under the JCPenney

Alternative, and also seeks dismissal of the instant action.  Plaintiff defends the Motion asserting

he never entered into an arbitration agreement with J.C. Penney, and therefore should be allowed

to litigate rather than arbitrate.

### III. DISCUSSION

**A.      Standard of Review**

The Federal Arbitration Act governs arbitration agreements relating to transactions

involving interstate commerce.  9 U.S.C. §§ 1-14.

> A written provision . . . or a contract evidencing a transaction involving commerce to
> settle by arbitration a controversy thereafter arising out of such contract or transaction, or
> the refusal to perform the whole or any part thereof, or an agreement in writing to submit
> to arbitration an existing controversy arising out of such a contract, transaction, or
> refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at
> law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "A matter should not be sent to arbitration unless there is a valid agreement to

arbitrate and the underlying dispute falls within the scope of that agreement."  Telectronics

Pacing Sys., Inc. v. Guidant Corp., 143 F.3d 428, 433 (8th Cir. 1998).  As a general matter,

courts are required to "rigorously enforce agreements to arbitrate."  Shearson/American Express,

Inc. v. McMahon, 482 U.S. 220, 226 (1987).

**B.     Validity of Arbitration Agreement**

Plaintiff argues that J.C. Penney's arbitration agreement is invalid for two reasons.  First, Plaintiff avers that as a matter of law, unsigned agreements to arbitrate are unenforceable.  Second, Plaintiff claims that no evidence exists to suggest that Plaintiff was aware of, much less agreed or acquiesced to, the J.C. Penney alternative dispute resolution program.

Plaintiff first contends that unsigned arbitration agreements are unenforceable.  Plaintiff relies on the Supreme Court's holding in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995), and the unpublished opinion of the Eighth Circuit in Addison v. Everest Connections Corp., 37 Fed. Appx. 841 (8th Cir. 2002).  Under Plaintiff's theory, these cases implicitly overrule the holdings in Lang v. Burlington N. R.R., 835 F. Supp. 1104 (D. Minn. 1993), and Pine River State Bank v. Mettille, 333 N.W.2d 622 (Minn. 1983).  Lang presents a pattern nearly identical to that of the instant case.  In Lang, the defendant employer established an arbitration policy similar to the one instituted by J.C. Penney.  835 F. Supp. at 1105.  The plaintiff, who had worked for defendant for over 25 years, was not required to sign the agreement, but did not object to the policy at the time of its implementation.  Id.  The Lang court held that under Minnesota law as set forth in Pine River, "clear and definite policy language in employee manuals may constitute a binding unilateral contract."  Id. at 1106, citing Pine River, 333 N.W.2d at 626-27.  Lang also cites Pine River for the proposition that a unilateral employment contract may be binding on an employee if it is definite in form and clearly communicated to the employee.  Id., citing Pine River, 333 N.W.2d at 626.  Finally, Lang states that "'the employee's retention of employment constitutes acceptance of the offer . . . [B]y continuing to stay on the

4

job, although free to leave, the employee supplies the necessary consideration for the offer.'" Id., quoting Pine River, 333 N.W.2d at 627.  Ultimately, the Lang court found that the plaintiff had accepted the arbitration agreement by continuing his employment with defendant, and on that basis, a contract was created.

Contrary to Plaintiff's arguments, First Options and Addison do not overrule the holdings of Lang and Pine River.  First Options involved multiple plaintiffs and an agreement memorialized in four separate documents.  514 U.S. at 940.  The Supreme Court reviewed a Third Circuit decision discussing whether some of the plaintiffs could be bound to an arbitration agreement contained within one of the documents, even though those particular plaintiffs had not signed that specific document.  Id. at 941.  The Supreme Court, however, did not directly address this issue in its decision.  Rather, the two holdings of First Options are directed to whether a court or an arbitrator should determine the arbitrability of issues involved in the suit, and what standard of review the Third Circuit should have employed in reviewing the district court's decision.  Id.  Neither holding impacts the validity of the Lang or Pine River decisions. Moreover, the factual background of First Options is distinguishable from the instant case.  First Options, unlike the instant case, involved multiple plaintiffs and multiple documents, only one of which contained an arbitration clause.  The instant case involves neither multiple plaintiffs nor multiple documents.  Consequently, First Options does not overrule, explicitly or implicitly, Lang or Pine River.

Similarly, Addison does not impact the holdings of Lang or Pine River.  In Addison, the Eighth Circuit considered whether plaintiff employees should be required to arbitrate disputes based on a clause in an LLC agreement.  Addison, 37 Fed. Appx. at 842.  The Eighth Circuit

ruled for the plaintiffs, determining that the plaintiffs were not parties to the LLC agreement.  Id.
Addison does not alter the holdings in Lang or Pine River, however, because it does not involve
nor address arbitration agreements contained within employee manuals, policies, or agreements.
Id.

In the alternative, Plaintiff argues that even if unsigned employment manuals or policies
can bind employees, he is not bound to the JCPenney Alternative because no evidence exists that
the terms of the program were communicated to him, nor does evidence exist that he
affirmatively accepted the terms of the JCPenney Alternative.  Significantly, Plaintiff does not
deny that he was aware of the program.  Further, the affidavit of Timothy Woodbury, the J.C.
Penney employee in charge of disseminating information to management associates regarding
the JCPenney Alternative,[2] and the fact that Plaintiff never affirmatively raised any objections to
the program, is sufficient to find that Plaintiff acquiesced to the JCPenney Alternative.  On that
basis, a contract was formed between Plaintiff and J.C. Penney.  Arbitration will be compelled
and the Complaint dismissed.

Finally, Plaintiff argues that even if he is bound to the arbitration agreement, it should not
be enforced because the fee-splitting provision contained within it voids the agreement for
unconscionability.  However, the Eighth Circuit has determined that "a fee-shifting provision by
itself does not make an arbitration agreement unenforceable."  Faber v. Menard, Inc., 367 F.3d
1048, 1053 (8th Cir. 2004).  Here, the fee-shifting provision is reasonable, as it attributes less

---

[2] Plaintiff emphasizes that in J.C. Penney's briefing papers, it argues that Woodbury
informed employees of the Edina store of the JCPenney Alternative, when in fact Plaintiff
worked at the Burnsville store at the relevant time.  However, Woodbury's affidavit states that
he informed all the managers at all the stores in his district, including the Burnsville store, of the
program.  Woodbury Aff. ¶¶ 3, 5, 6.

than 5% of arbitration costs to the employee.  Ex. to Woodbury Aff.  Thus, the provision is valid,

and the agreement does not fail for unconscionability.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Defendant's Motion to Compel Arbitration and Dismiss Under Rule 12(b)

[Docket No.3] is **GRANTED**; and

2.      Plaintiff's Complaint [Docket No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 21, 2006.